IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL S. OWL FEATHER-GORBEY,   :   Civil No. 3:20-cv-1150
:
    Petitioner   :   (Judge Mariani)
:
v.   :
:
WARDEN, USP-LEWISBURG,   :
:
    Respondent   :

## MEMORANDUM

Presently pending before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), filed by Petitioner Michael S. Owl Feather-Gorbey ("Gorbey"), an inmate confined at the Federal Correctional Institution, Beckley, West Virginia. Gorbey contends that his due process rights were violated in the context of a disciplinary hearing held at the Federal Correctional Institution, Cumberland, Maryland. (*Id.*). For the reasons set forth below, the Court will deny the petition.

**I.    Background**

On August 5, 2019, Gorbey was charged in incident report number 3287668 with fighting with another person, a code 201 violation. (Doc. 1, p. 2; Doc. 13-1, p. 5). Gorbey alleges he was engaging in self-defense and was innocent of the charge, the reporting officer was improperly also the investigating lieutenant, he was disallowed too many good conduct days, and the Bureau of Prisons ("BOP") is not permitted to disallow good conduct

time because he is a D.C. inmate. (Doc. 1). For relief, Gorbey requests, *inter alia*, that the Court expunge the incident report and restore the loss of good conduct time. (*Id.* at p. 8).

## II. Discussion

On July 31, 2019, Gorbey was involved in a physical altercation with another inmate. (Doc. 13-1, p. 1, Incident Report). On August 5, 2019, incident report 3287668 was served on Gorbey charging him with fighting with another person. (*Id.*). As part of the investigation, Gorbey stated: "I was defending myself in my cell." (*Id.* at p. 6, § 24).

On August 6, 2019, Gorbey appeared before the Unit Discipline Committee ("UDC"). (*Id.* at p. 7, §§ 17-21). Due to the severity of the offense, the UDC referred the charge to the Discipline Hearing Officer ("DHO") with a recommendation that appropriate sanctions be imposed. (*Id.* at p. 7, §§ 18-20).

On August 6, 2019, a staff member informed Gorbey of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 13-1, p. 9, Inmate Rights at Discipline Hearing). Gorbey was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Doc. 13-1, p. 8, Notice of Discipline Hearing before the DHO). Gorbey signed both forms, he requested representation by a staff member, and elected to call witnesses on his behalf. (*Id.*).

On August 23, 2019, a DHO hearing was conducted. (Doc. 13-1, pp. 11-16, DHO Report). During the August 23, 2019 hearing, the DHO confirmed that Gorbey received

advanced written notice of the charges, that he had been advised of his rights before the DHO, and that Gorbey requested staff representation and requested to call witnesses. (*Id.* at pp. 11-12, §§ I-III). Gorbey indicated that he understood his rights. (*Id.* at p. 13 § V). The DHO read following written statement of the reporting officer:

> On August 5, 2019, at 9:00 AM, SIS completed an investigation involving a possible physical altercation between inmate Childers, Anthony #17603-032 and inmate Gorbey, Michael #33405-013. This investigation revealed the following information.
>
> Inmate Childers was medically assessed on August 1, 2019, at 7:25 AM, which revealed redness to his left cheek and a small contusion noted to his bottom left lip.
>
> A review of staff provided memos determined inmate Childers admitted to being involved in a physical altercation with inmate Gorbey when questioned by staff and was noted to have injuries consistent with being involved in a physical altercation.
>
> An SIS interview was conducted with inmate Gorbey on August 1, 2019. During this interview Gorbey made the following statement.
> "JR (Childers) threw his hands up in the air and started yelling that I am not going to tell him what to do or when to do it. I thought he was coming at me aggressively when he threw his hands in the air and starting yelling so I kind of pushed him in the face trying to get him away from me. Then he started coming at me wildly swinging his fists toward me. That is when I grabbed him and held him on the bed. I asked my cellie (Manuel, Curtis #16446-408) to open the door so I could get out of the cell and he just stood there. So I pushed myself off of JR and ran out of the cell. He was still trying to hit me when I left the cell."
>
> A review of VICON video footage was conducted August 2, 2019, which revealed the following information.
> 21:26:31 Gorbey who is standing in front of cell 204 can be seen putting on white gloves as he is looking in the direction of Manuel and Childers.

3

> 21:30:20 Manuel and Childers exit cell 216 and begin walking toward cell 204.
> 21:30:53 Gorbey meets Manuel and Childers at cell 204 and all three inmates enter the cell with Gorbey entering last and closing the door behind him.
> 21:32:38 The door to cell 204 opens violently and Gorbey runs out of cell 204 with Childers behind him. As Gorbey exits the cell[,] Childers can be seen throwing a right handed punch to the back area of Gorbey.
> 21:32:52 Gorbey has a conversation with Manuel and Childers who are standing in the doorway of cell 204 then begins walking away from cell 204, down the stairs, taking off his gloves and eventually sitting in the common area of the housing unit.
>
> It was determined through inmate statements, inmate medical assessments and VICON video review[,] inmate Gorbey was involved in a physical altercation with inmate Childers on July 31, 2019, at 9:32 p.m., in cell 204 of housing unit CB.

(*Id.* at pp. 13-14, § V). Gorbey stated that the incident report was not true. (*Id.*). However, the DHO found the conclusion of the investigation to be more credible than Gorbey's explanation and statement that the report was not true. (*Id.* at p. 15, § V). The DHO specifically found that Gorbey did not provide any credible evidence that the report was fabricated. (*Id.*). The DHO concluded that the evidence suggested that a hostile physical altercation occurred between Gorbey and inmate Childers. (*Id.*).

In reaching his decision, the DHO considered the reporting officer's incident report, Gorbey's handwritten statement, the video footage—particularly the footage of Gorbey putting on gloves just before entering the cell—which the DHO believed was to minimize any wounds to his hands, the report of the investigating officer, Gorbey's contention that the report was not true, the witness statements—who had no firsthand knowledge of the

incident, the statement from the staff representative—"Everything that was reviewed was consistent with what was reported", staff memoranda, clinical encounters of Gorbey and inmate Childers, and photographs. (*Id.*at pp. 15-16, § V). After consideration of the evidence, the DHO found that the greater weight of the evidence supported a finding that Gorbey committed the prohibited act of fighting with another person, a code 201 violation. (*Id.* at p. 16, § V). The DHO sanctioned Gorbey with 27 days loss of good conduct time, 10 days of disciplinary segregation, and loss of commissary and email privileges for 120 days. (*Id.* at p. 16, § VI). At the conclusion of the hearing, the DHO provided a copy of the report to Gorbey and advised him of his appeal rights. (*Id.* at p. 16, § VIII).

Gorbey's sanctions included the loss of good conduct time; therefore, he has identified a liberty interest in this matter. Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.*

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the

5

loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and, (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The

incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. §§ 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

    In the instant case, it is clear that Gorbey was afforded all of the required procedural rights set forth in *Wolff*. He received advanced written notice of the charge and incident report on August 5, 2019. Gorbey appeared before the UDC and was allowed to provide a statement on his own behalf. He was properly informed of his rights before the DHO hearing, as well as given the opportunity to make a statement, present documentary

7

evidence, have a staff representative, and to present witnesses and question the witnesses. At the conclusion of the hearing, Gorbey received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Gorbey was also notified of his right to appeal.

Gorbey asserts that the incident report runs afoul of BOP Program Statement 5270.09, § 541.5(b)[1] because the investigating officer also wrote the incident report. Specifically, the regulations provide that the officer who investigates the incident may not be the employee who reported the incident or otherwise be involved in the incident. *Id.* The record clearly indicates that the incident was investigated by Lieutenant Hagelin and the incident report was authored by Lieutenant Deurr. (Doc. 13-1, pp. 5-6).

Since Gorbey was afforded all of his procedural rights, the only remaining issue is whether there was "some evidence" to support the decision by the DHO. The record clearly reveals the existence of evidence to allow the DHO to conclude that Gorbey was guilty of the charge. The DHO determined that the greater weight of the evidence supported the finding that Gorbey violated code 201. In reaching his decision, the DHO considered the reporting officer's incident report, Gorbey's handwritten statement, the video footage, the report of the investigating officer, Gorbey's claim that the report was not true, the witness

---

[1] The regulations governing the BOP's Inmate Discipline Program are found at Program Statement 5270.09, available at https://www.bop.gov/policy/progstat/5270_009.pdf (last visited September 23, 2021).

statements, the statement of the staff representative, staff memoranda, clinical encounters, and photographs. Based upon this evidence as relied upon by the DHO, the Court finds that Gorbey's due process rights were not violated by the determination of the DHO.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Gorbey was found guilty of a 200-level, high severity prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 200-level prohibited acts:

> A. Recommend parole date rescission or retardation.
> B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
> B.1 Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
> C. Disciplinary segregation (up to 6 months).
> D. Make monetary restitution.
> E. Monetary fine.
> F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
> G. Change housing (quarters).
> H. Remove from program and/or group activity.
> I. Loss of job.
> J. Impound inmate's personal property.
> K. Confiscate contraband.
> L. Restrict to quarters.
> M. Extra duty.

28 C.F.R. § 541.3 (Table 1).

Thus, the sanctions imposed by the DHO in this instance were consistent with the severity level of the prohibited act and within the maximum available to the DHO.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense." *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006) (citing *Rummel v. Estelle*, 445 U.S. 263, 271-74 (1980)). Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive. *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The penalties imposed here, loss of good conduct time, disciplinary segregation, and loss of privileges, do not work an "atypical and significant hardship" on Gorbey and do not serve to extend his confinement beyond the expected parameters of his sentence. *Sandin*, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

### III. Conclusion

Based on the foregoing, the Court will deny the petition for writ of habeas corpus. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: September 24, 2021